**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| MAMADOU DIALLO, | : | |
| | : | Case No. 1:25-cv-647 |
| Petitioner, | : | |
| | : | |
| vs. | : | Judge Susan J. Dlott |
| | : | |
| MATTHEW PUTRA,[1] Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement, | : | Order Granting Petition for Writ of Habeas Corpus |
| | : | |
| Respondent. | : | |

This matter is before the Court on the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Habeas Petition") filed by Petitioner, Mamadou Diallo, a national and citizen of Mauritania, who has been detained at the Butler County Correctional Complex since August 25, 2025—for over a year now. (Doc. 4.) Respondent, Matthew Putra, Field Office Director for Enforcement and Removal Operations, for United States Immigration and Customs Enforcement ("ICE") filed a Return of Writ (Doc. 11) on September 25, 2025, and Diallo filed a Reply (Doc. 14) on October 3, 2025.

Most recently, on August 6, 2026, Diallo filed a Motion for Expedited Consideration, asserting that he has remained in custody for now over a year despite Respondent's assertion in its Return of Writ on September 25, 2025 that his removal was reasonably foreseeable. (Doc. 16). As confirmed on August 25, 2026 in its Response brief, ICE has not obtained travel

[1] Formerly Robert K. Lynch, the new Field Office Director was identified by the Respondent as Matthew Putra in its most recent filing. (*See* Doc. 17.)

documents necessary to effectuate his removal to Mauritania. (*See* Doc. 17 at PageID 116.) Because Diallo's detention—now in excess of one year—is unlikely to result in his removal in the reasonably foreseeable future, Diallo is being detained in violation of the Due Process Clause of the United States Constitution and his Habeas Petition (Doc. 4) will be **GRANTED**.

## I. BACKGROUND

### A. Diallo's Entry into the United States and Subsequent Detention[2]

Diallo is a national and citizen of Mauritania (officially the Islamic Republic of Mauritania located in Norwest Africa). (Doc. 4 at PageID 24.) Diallo was forcibly expelled from Mauritania in 1989 and entered the United States in 1997. (Doc. 4 at PageID 25; Doc. 14 at PageID 92). Diallo claims to have entered the United States unlawfully on October 29, 1997 at New York, New York using another individual's Burkina Faso passport. (Luke H. Affholter Declaration, Doc. 11-1 at PageID 56.)

Diallo filed an application for asylum and withholding of removal. (Doc. 4 at PageID 25.) In late 2005, an Immigration Judge ("IJ") denied his asylum application and issued an Order of Removal. (*Id.* at PageID 25; Doc. 11-1 at PageID 56.) After the IJ ordered Diallo removed, ICE issued Form 1-220B, Order of Release on Supervision ("OSUP"). (Doc. 4 at PageID 25). Diallo asserts that he has fully complied with the conditions of his OSUP by regularly attending ICE check-in appointments. (*Id.*) Diallo appealed the IJ"s decision to the Bureau of Immigration Appeals ("BIA"), but the appeal was dismissed on July 22, 2008. (Doc. 11-1 at PageID 56.)

---

[2] Facts are primarily drawn from the allegations of the Petition and Respondent's Response Brief, to which a Declaration of Luke H. Affholter, a Supervisory Detention and Deportation Officer with he Columbus Sub Office of Enforcement and Removal Operations ("ERO") for ICE, Department of Homeland Security ("DHS"), is attached. (Doc. 11, Doc. 11-1.)

On or around August 25, 2025, Diallo was arrested during a routine ICE check-in appointment in Westerville, Ohio. (*Id.*; Doc. 4 at PageID 25.) He has been detained in the Butler County Correctional Complex ever since, which at this point has been for over a year. (*Id.*) Diallo asserts that during his arrest, Respondent told him he was taken into custody at the time due to mistaken identity. (Doc. 4 at PageID 25.) Rather, Respondent intended to arrest and detain a different individual with a different name and A-number from Diallo. (*Id.*)

On September 10, 2025, ICE sent a request to the Mauritanian Consulate in Washington, D.C. asking the Consulate to issue a travel document for Petitioner. (Doc. 11-1 at PageID 56.) During the pendency of this case, ICE has not effectuated the Order to Remove Petitioner from the United States, nor has Respondent obtained travel documents necessary to effectuate removal. (Doc. 16 at PageID 111; Doc. 17.)

Diallo asserts that he has no criminal history, is not a flight risk, and is not a danger to the community. (Doc. 4 at PageID 25.) He asserts that he has deep ties to the community, has sole custody of four minor children who are United States citizens, and had valid work authorization prior to his arrest. (*Id*. at PageID 26). Diallo asserts that he is the sole provider for his family. (*Id.*) Both he and his daughter have medical issues. (*Id.*) Diallo's daughter suffers from a heart condition that has required two open heart surgeries. (*Id.*) Diallo requires medication to treat high blood pressure. (*Id.*)

**B. Procedural History**

Diallo filed a Habeas Petition on September 5, 2025, which was refiled on September 8, 2025 due to a filing error. (Docs. 1, 4.) In his Petition, Diallo asserted three claims: first, that his detention violates his right to procedural due process under the Fifth Amendment to the United

States Constitution. (Doc. 4 at PageID 26–27.) Second, Diallo asserted his detention violates Immigration and Nationality Act ("INA") 8 U.S.C. § 241(a) and 8 U.S.C. § 1231(a). (*Id.* at PageID 27–28.) Third, Diallo sought attorney's fees and costs under the Equal Access to Justice Act ("EAJA), as amended, 28 U.S.C. § 2412. (*Id.* at PageID 28.)

Respondent filed a Return of Writ on September 25, 2025, in which it contests jurisdiction and argues that Diallo's detention pending removal is lawful. (Doc. 11.) Petitioner argued had been detained for "only" one month and "his removal is reasonably foreseeable." (*Id.* at PageID 51.) Respondent also argued that Petitioner was afforded due process. Petitioner filed a Reply on October 3, 2025. (Doc. 14.) On August 6, 2026, Petitioner filed a Motion to Expedite Consideration of his Habeas Petition arguing that his now one-year-long detention has demonstrated that his removal is not reasonably foreseeable. (Doc. 16.) Respondent filed a Response on August 25, 2026 indicating that it has yet to obtain the necessary travel documents to effectuate removal to Mauritania and that Petitioner has moved to re-open his Order to Remove has stayed his removal altogether. (Doc. 17.)

## II. LAW AND ANALYSIS

### A. Jurisdiction

As an initial matter, the Court has jurisdiction over this action. Respondent's argument that the Court lacks jurisdiction was recently rejected in another nearly identical case involving a 55-year-old citizen of Mauritania who entered the United States over twenty-five years ago, was denied asylum and ordered removed in 2000, and continued reporting dutifully on an Order of Release on Supervision. *See Camara v. Field Off. Dir. for Enf't & Removal Ops. Detroit*, No. 1:25-cv-740, 2026 WL 775585, at *1–2, *4 (S.D. Ohio Mar. 19, 2026) (J. Hopkins). After

nearly 18 years of peacefully living in the United States and despite requesting of his own accord travel documents from his home country, which were never provided, the petitioner, Camara, was arrested at routine ICE-check-in. *Id*. at *2. He was held for more than six months in detention without ICE obtaining the requisite travel documents needed to effectuate removal, and he brought a habeas petition seeking the same relief as does Diallo. *Id*.

In *Camara*, Judge Hopkins rejected the same jurisdictional arguments Respondent raises here. The court found that the petitioner's challenging the legality of his detention, not the legitimacy of ICE's order that he be removed, fell "squarely within the ambit of [28 U.S.C.] § 2241's grant of authority allowing a district court to hear and decide in the context of a habeas corpus petition a post-removal detention claim by an immigrant alleging a violation of the Due Process Clause of the Constitution." *Id*. at *4. The court explained:

> A petition for writ of habeas corpus under 28 U.S.C. § 2241 "is appropriate for raising statutory and constitutional challenges to post-removal detention by ICE." *Estenor v. Holder*, No. 1:11-cv-743, 2011 WL 5572596, at *2 (W.D. Mich. Oct. 24, 2011) (citing *Zadvydas*, 533 U.S. at 688; *Ly v. Hansen*, 351 F.3d 263, 266 (6th Cir. 2003)), *report and recommendation*, *adopted*, 2011 WL 5589279 (W.D. Mich. Nov. 16, 2011). Thus, contrary to Respondent's argument, courts in this Circuit have consistently recognized the authority of district courts to hear unlawful detention claims brought by immigration detainees. *See, e.g.*, *Touray v. Lynch*, No. 1:25-cv-683, 2025WL 2778271, at *3 (S.D. Ohio Sept. 30, 2025) (explaining courts "have jurisdiction to review challenges to detention" in a post-removal context); *Karki v. Jones*, No. 1:25-cv-281, 2025 WL 1638070, at *8 (S.D. Ohio June 9, 2025) (also finding proper jurisdiction over a detention-based claim in a post-removal context).

*Id*. The Court adopts this reasoning as its own and too finds jurisdiction is proper here for Diallo to challenge the legality of his lengthy detention, rather than the underlying removal order.

### B. Due Process

The Court turns next to the issue of whether Diallo's detention violates the Constitution's

Due Process Clause—and finds that it does. The Supreme Court "has held that the Due Process Clause protects an alien subject to a final order of deportation." *Zadvydas v. David*, 533 U.S. 678, 693– 94 (2001). Among the fundamental requirements of due process are ones that mandate that an individual be afforded notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Diallo argues that his continued detention violates 8 U.S.C. § 1231(a) of the INA, governing detention and removal of aliens ordered removed. § 1231(a)(1)(A) sets forth a 90-day period of time to effectuate removal: "Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "Further, § 1231(a)(2) provides for mandatory detention of the alien during the 90-day removal period, and § 1231(a)(6) allows for the government to detain aliens past the 90-day removal period if they are removable and considered 'unlikely to comply with the order of removal.'" *Martinez v. Larose*, 968 F.3d 555, 560 (6th Cir. 2020). The category of aliens subject to detention beyond the 90-day removal period includes those deemed "inadmissible" under § 1182, as Diallo is. (Doc. 11 at PageID 49). *Clark v. Martinez*, 543 U.S. 371, 378 (2005); 8 U.S.C. § 1231(a)(6). When an alien is detained beyond the 90-day removal period, detention may continue for a period reasonably necessary to effectuate removal. In other words, detention of an alien subject to a final removal order is mandatory during the 90-day removal period, but discretionary thereafter. That said, the Supreme Court has held that the statute does not permit indefinite detention. *Zadvydas v. Davis*, 533 U.S. 678.

In *Zadvydas*, the petitioners[3] had been detained beyond the 90-day removal period awaiting deportation because the United States government could not find a country willing to accept them. *Id*. at 684–86. Combining their cases to address their § 2241 petitions challenging the constitutionality of their continued detention, the Supreme Court held:

> We have found nothing in the history of these statutes that clearly demonstrates a congressional intent to authorize indefinite, perhaps permanent, detention. Consequently, interpreting the statute to avoid a serious constitutional threat, we conclude that, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.

*Id*. at 699. The Supreme Court then deemed that six months was presumptively reasonable for the government to effectuate removal. *Id*. at 701; *Martinez*, 968 F.3d at 565. Critically, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Since *Zadvydas*, the Supreme Court has clarified that any due process concerns at the heart of *Zadvydas* arise only if there exists a danger of indefinite detention and there is no significant likelihood of removal in the reasonably foreseeable future. *Denmore v. Kim*, 538 U.S. 510, 527–31 (2003); *see also Martinez*, 968 F.3d at 565 (quoting *Zadvydas*, 533 U.S. at 701).

Respondent argues that *Zadvydas* does not apply to Petitioner's case at all. Initially, Respondent asserted that Petitioner "has only been detained for one month and his removal is reasonably foreseeable." (Doc. 11 at PageID 51.) In support, Respondent cited the Affholter's Declaration, dated September 24, 2025, in which Affholter states:

> I am unaware of any institutional barriers that would prevent ICE from obtaining a travel document for the petitioner from Mauritania or that would prevent ICE

[3] *Zadvydas* involved two different petitioners, one who was born of Lithuanian parents in a German displaced persons camp, and the other who was born in Cambodia. 533 U.S. at 684–85.

> from removing him to Mauritania once it receives a valid travel document. Mauritania has regularly issued travel documents for aliens in the United States who are subject to final orders of removal. Also, ICE routinely removes individuals to Mauritania.
> I am unaware of any institutional barriers that would prevent the petitioner's removal from occurring in the reasonably foreseeable future.

(Doc. 11-1 at PageID 56–57.) That was 11 months ago. On August 6, 2026, Petitioner filed a new brief asserting that he is still incarcerated awaiting removal, which provides "good reason to believe" that his removal is not reasonably foreseeable. *Zadvydas*, 533 U.S. at 701. He has also asserted that prior to his detention, he had been compliant on OSUP for twenty years, with no known issues.

Respondent has the burden of proffering evidence to rebut Petitioner's showing. *Id.* Respondent has not met its burden here. It did not come forward with evidence that travel documents had been obtained or with details of specific travel arrangements. In rebuttal, Respondent asserts that Petitioner filed a motion to reopen his removal with the BIA on October 27, 2025, which "automatically stayed" his removal. (Doc. 17 at PageID 116.) Respondent also asserts that as of August 25, 2026, the BIA has not ruled on Petitioner's motion to reopen his removal, and Mauritania has yet to issue a travel document. (*Id*.) Respondent's position that Petitioner's underlying motion before the BIA stays Diallo's removal undermines its argument that his removal is reasonably foreseeable. And, Respondent has not obtained the travel document needed from Mauritania in the past year. With no action taken for over twelve months, and an implied inability to remove with a pending BIA motion pending, the Court cannot conclude that Respondent has rebutted Petitioner's showing.[4]

[4] This is not the Court's first habeas case involving a detainee being held pending removal to Mauritania. As explained below, the Court denied habeas relief to that detainee on April 30, 2026, but he is still being held in the Butler County Jail four months later.

In the similar *Camara* case, Judge Hopkins found that the petitioner had made substantial effort to obtain travel documents for his return to Mauritania without success, and the Respondent failed meet its burden of rebutting Camara's showing that there was a good reason to believe he would not be removed in the reasonably foreseeable future. As in that case, the Court concludes that removal is no longer reasonably foreseeable based on the Supreme Court's decision in *Zadvydas*. 2026 WL 775585, at *10; *Isse v. Field Off. Dir. of Enf't & Removal Ops., Detroit*, No. 1:25-cv-872 (S.D. Ohio, May 22, 2026) (Doc. 20, Order Granting Writ of Habeas Corpus) (finding petitioner's removal was not reasonably foreseeable where he was held for over a year in custody); s*ee Masheli v. Noem*, No. 1:25-cv-1577, 2026 WL 177591, at *3 (W.D. Mich. Jan. 22, 2026); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. 2025) (granting release prior to six months of detention where "Petitioner sufficiently established that his removal is not reasonably foreseeable and that his detention has exceeded that 'period reasonably necessary to secure [his] removal.'") (quoting *Zadvydas*, 533 U.S. at 699–700)); *Mbonga v. Raycraft*, 809 F. Supp. 3d 762, 767 (N.D. Ohio 2025) ("Given [Petitioner's] history of

---

Like Diallo, Assane Diouf filed a habeas petition challenging his detention by ICE as he awaited the execution of a final order of removal to Mauritania. *Diouf v. Raycraft*, No. 1:24-cv-834, 2026 WL 1179423, at *1 (S.D. Ohio Apr. 30, 2026). After the case was filed, the Court ordered on November 18, 2025 that Diouf could not be transferred out of the Southern District of Ohio without leave of the Court. *Id.* at *2. In Diouf's case, unlike here, Respondents asserted that they had a specific plan to remove Diouf—he was scheduled to be removed on a chartered deportation flight scheduled for March 29, 2026. *Id.* But there was confusion in the record as to whether Respondents had the necessary travel documents for Diouf for that deportation flight. *Id.* The Court did not lift its order not to transfer Diouf out of the Southern District of Ohio prior the March 29, 2026 flight. *Id.* Respondents subsequently informed the Court that the government of Mauritania had issued *laissez-passers* for each of six Mauritanian citizens deported on that flight. *Id.* at *3. The Court stated that it had "no reason to doubt that Mauritania would have accepted the removal of Diouf if he had not been subject to this Court's November 18, 2025 Order not to transfer him." *Id.* at *4. The Court denied Diouf's habeas petition on April 30, 2026 holding that "although Diouf's removal has been delayed, Respondent has demonstrated that it is likely Diouf will be removed to Mauritania in the reasonably foreseeable future." *Id.* The Court stated that Diouf could file another habeas petition at a later date if his detention continued for an extended period of time. *Id.* at *5.

Diouf is still being detained in the Butler County Jail four months later. *See* U.S. Immigration and Customs Enforcement, Online Detainee Locator System, https://locator.ice.gov/odls/#/search (last viewed 8/27/2026). Diouf has not filed a new habeas petition challenging his continued detention.

compliance and the fact that the travel documents had not been secured, his immediate detention was unnecessary.").

In sum, Petitioner has provided "good reason to believe" removal is not significantly likely in the reasonably foreseeable future, and the Government has not rebutted that showing. *Zadvydas*, 533 U.S. at 701. Diallo's continued detention for over a year without any apparent meaningful attempt to effectuate his removal violates the Due Process Clause of the Fifth Amendment.

**IV. CONCLUSION**

For the foregoing reasons, the Undersigned concludes that Diallo's detention is in violation of his Due Process rights under the Fifth Amendment to the United States Constitution. His Petition for a Writ of Habeas Corpus (Doc. 4) is **GRANTED**. Respondent is **ORDERED** to immediately release Petitioner from custody, subject to his preexisting Order of Supervision, and to certify compliance with this Order by filing on the docket no later than one day after the filing of this Order.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge